# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RICHARD TUSCHHOFF,

      Plaintiff,

vs.                                        Civ. No. 01-377 MV/WWD

INTEL CORPORATION,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment, filed March 18, 2002 **[Doc. No. 46]** and Plaintiff's Motion for Summary Judgment, or, in the Alternative, Motion to Remand, filed March 20, 2002 **[Doc. No. 48]**.  The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that defendant's motion is well-taken and will be **GRANTED,** and that plaintiff's motion is not well-taken and will be **DENIED.**

## BACKGROUND

Plaintiff, Richard Tuschhoff, was hired by Intel Corporation ("Intel") on June 26, 1995, and worked as a manufacturing technician at Intel's Rio Rancho, New Mexico site until November 22, 1998.  On November 23, 1998, plaintiff was diagnosed with a herniated lumbar disc, and, based on this diagnosis, applied for benefits under Intel's Short Term Disability Plan

("STD Plan").

On May 24, 1999, Matrix Absence Management, Inc. ("Matrix"), the third party administrator for Intel's Long Term Disability Plan ("LTD Plan"),[1] advised plaintiff that he was eligible to apply for benefits under Intel's LTD Plan, which benefits, if granted, would commence on or about November 22, 1999. The LTD Plan defines "Disability" as:

> any illness or injury that is substantiated by objective medical findings and which renders a Participant incapable of performing work. During the first eighteen (18) months of Disability, a Participant must be unable to perform the work of his or her regular occupation or any reasonably related occupation as determined by the Company in its sole discretion. After eighteen (18) months of Disability, a Participant must be unable to perform the work of any occupation for which he or she is or becomes reasonably qualified for by training, education or experience. For purposes of determining when the first eighteen (18) months of Disability has elapsed, there shall be included any period during which the Participant has received benefits under any Company sponsored short-term disability plan.

Exhibit A, §2.05.

Plaintiff filed a claim for benefits with the Social Security Administration ("SSA") on May 3, 1999. On July 19, 1999, plaintiff was awarded SSA benefits retroactive to May 1999.

On June 15, 1999, plaintiff filed a Long Term Disability Employee Application with Matrix, identifying his disabling condition as a herniated disc. Plaintiff also gave Matrix a release form authorizing the SSA to provide Matrix with his SSA benefit information.

By letter dated July 28, 1999, Matrix informed plaintiff that Dr. Brian P. Delahoussaye would be providing an independent and neutral medical evaluation of plaintiff's disability, and that an appointment had been scheduled for him to see Dr. Delahoussaye on August 26, 1999. After

---

[1] The LTD Plan provides that Intel "may engage the services of such persons or organizations to render advice or perform services with respect to its duties and responsibilities under the Plan as it may determine to be necessary or appropriate." Exhibit A, §8.02.

plaintiff's visit on August 26, 1999, Dr. Delahoussaye issued a report indicating that he had

conducted a physical exam of plaintiff and had reviewed several of his medial records dating from

July 1998 to May 1999. Dr. Delahoussaye's report concluded with the following "Plan":

> At the present time, Mr. Tuschuff [*sic*] presented with a history of chronic low
> back pain. I did not have an MRI scan or a CT scan of the back to review, and I
> have only his report of these findings. On one note it was written that the patient
> has degenerative disc disease, and in another report it was noted that the patient
> has a herniated disc. In any event, the patient does not present with objective signs
> of radiculopathy today. It would be my opinion that even if he does have a
> herniated disc, he is capable of doing light duty work on a full time basis. He
> should be allowed to move between sitting and standing as needed to control
> symptomatology.
>
> I have reviewed the patient's specific job duties and responsibilities with Intel as a
> manufacturing technician. It would be my opinion that the requirements of
> standing on his job might be greater than someone who has problems with their
> lower back can tolerate. Therefore, I do not believe that he can return back to do
> this job.
>
> I was unable to identify any non-physical factors that may be contributing to his
> disability. I believe that he is capable of working at light duty status. He should be
> able to sit or stand for one-half hour to one hour intervals at a time. He should be
> able to work at a light duty capacity with a maximum lift of 20 pounds.

Exhibit C, pp.13-14.

Plaintiff underwent an MRI on October 14, 1999. In a supplementary report dated

November 16, 1999, Dr. Delahoussaye compared this MRI scan with the MRI scan that had been

taken on December 13, 1998. Dr. Delahoussaye's supplementary report indicated that the

October 1999 MRI showed "degenerative disc disease at L3-4 through L5-S1" and "disc

protrusions at L3-4, L4-5, and L5-S1." Exhibit C, p. 4. In comparing the two MRI scans,

Dr. Delahoussaye found "no real interval change in findings" and set forth his "opinion to a

reasonable degree of medical probability that Mr. Tuschoff [*sic*] is capable of working full time at

a light duty capacity." *Id.*

Defendant then hired Roberta Rose, a Vocation Case Manager, to perform a Transferable Skills Analysis of plaintiff. In her Employability Assessment report dated April 6, 2000, Ms. Rose identified twelve jobs that fell within plaintiff's education, training, experience and physical capacities, and provided the following "Summary":

> The above analysis indicates that there are several jobs in which Mr Tuschhoff has directly-related skills. It needs to be noted that according to Dr. Delahoussaye's restrictions, a job would need to be found in the light-duty category with the following restrictions: stand and walk for one to two hours at a time; sit for 30 minutes at a time. These restrictions might cause a problem with a potential employer and hinder Mr. Tuschhoff's employability. Mr. Tuschhoff may need to have direct assistance with job placement.

Exhibit C, p. 317.

During Matrix's evaluation of plaintiff's claim for benefits, Matrix requested, and was provided with, medical records and other information from plaintiff's treating physicians Paul Linvingston, D.O., Michael McCutcheon, M.D., Alison Bourdreaux, M.D., Donald Porter, M.D., and Val Gieri, M.D. In addition, plaintiff provided Matrix with additional medical records from Lovelace Medical Center, St. Joseph's Hospital, New Mexico Orthopedic Association, Surgical Associates P.A., Southwest Spine Center, Dr. Ronald J. Rosandich, New Mexico Heart Institute and Southwest Pulmonary Specialists.

Intel paid benefits to plaintiff under the STD Plan from November 23, 1998, through November 20, 1999, and under the LTD Plan from December 1999 through May 2000, thus providing plaintiff with benefits for the first eighteen months of his disability. By letter dated June 8, 2000, Matrix advised plaintiff that he would no longer be eligible for benefits under the LTD Plan, and that he would receive no benefits from May 22, 2000, forward (the period following the

first eighteen months of his disability). The letter stated that Matrix had reviewed medical records from Paul Livingston, MD, the October 14, 1999 MRI scan, Dr. Delahoussaye's independent medical evaluation, and Ms. Rose's vocational assessment and had concluded that, based upon the information in plaintiff's file, plaintiff did not meet the requirements for benefits under the LTD Plan as he was "not 'disabled' as defined by the Plan." Exhibit C, p. 327. Matrix's letter informed plaintiff of his right to request a review of the decision, and attached a Disability Appeal Procedure document with directions on how to pursue an appeal.

On July 20, 2000, plaintiff, through his current attorney, filed a written appeal of Matrix's decision. Thereafter, plaintiff's attorney sent Matrix additional medical records to supplement plaintiff's claim file. On January 10, 2001, plaintiff's attorney informed Matrix that plaintiff's appeal was complete.

By letter dated February 1, 2001, Matrix advised plaintiff that the Intel Disability Appeals Committee (the "Committee") had reviewed his claim for benefits, and had decided to uphold the denial of his claim. The letter explained the Committee's determination as follows:

> The Committee undertook a detailed review and discussion of the records contained in your file and determined that although you have some objective medical findings with regard to your low back condition, those findings are not so severe to prevent you from being gainfully employed. The Committee further noted that your asthma condition is well controlled. Your allergic rhinitis is controlled. The Committee noted that you do have some hearing loss, however your hearing loss does not prevent you from working. The Committee notes in Dr. Delahoussaye's report of November 16, 1999, he states "it is therefore my opinion to a reasonable degree of medical probability that Mr. Tuschhoff is capable of working full-time at a light duty capacity." The Committee further notes the Vocational Employability Assessment report that was completed on April 6, 2000, by Roberta Rose . . . identifies several jobs that you are capable of performing given your current physical condition as well as your education, training and work experience.

Therefore, the Intel Disability Appeals Committee has determined that there are no objective medical findings to support a Disability within the meaning of the Plan and benefits for the period of May 22, 2000 forward were appropriately denied.

Exhibit C, p. 301C.

Following the Committee's determination, plaintiff commenced an action against defendant in the Second Judicial District Court, Bernalillo County, New Mexico, Cause No. CV-2001-1658.  The case was removed to the United States District Court for the District of New Mexico upon defendant's Notice of Removal, filed April 4, 2002 **[Doc. No. 1]**.

In his First Amended Complaint, filed June 6, 2001, **[Doc. No. 12]**, plaintiff alleged that defendant's denial of his long term disability benefits was arbitrary, capricious, not made in good faith, unsupported by substantial evidence, erroneous as a matter of law and in violation of ERISA.  Accordingly, plaintiff sought relief against the Intel LTD Plan in an amount equal to the benefits that he did not receive from June 2000 forward.

On March 18, 2002, defendant filed a motion for summary judgment and a memorandum of law in support **[Doc. Nos. 46 & 47]**.  Plaintiff filed a response and memorandum brief in opposition to defendant's motion on April 1, 2001 **[Doc. No. 51]**.  On April 15, 2002, defendant filed a reply brief in support of its motion **[Doc. No. 52]**.

Plaintiff filed his own motion for summary judgment, or, in the alternative, motion to remand, and a memorandum in support on March 20, 2002 **[Doc. Nos. 48 & 49]**.  Defendant filed a response in opposition on April 1, 2002 **[Doc. No. 50]**.  On April 15, 2002, plaintiff filed a reply and memorandum brief to defendant's response to plaintiff's motion **[Doc. No. 54]**.

**STANDARD**

A.    <u>Summary Judgment</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict

for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

B.     Denial of Benefits Challenged Under 20 U.S.C. §1132(a)(1)(B)

Under ERISA, a beneficiary of a qualified plan has the right to judicial review of benefit denials. 20 U.S.C. §1132(a)(1)(B). The Supreme Court has held that "a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

In the instant case, the LTD Plan document states:

> The Company is the named fiduciary which has the authority to control and manage the operation and administration of the Plan, and is the "administrator" of the Plan and the "plan sponsor" as such terms are used in ERISA. The Company shall make such rules, regulations and computations and shall take such other actions to administer the Plan as it may deem appropriate. The Company shall have the sole discretion to interpret the terms of the Plan and to determine eligibility for benefits. The Company's rules, regulations, interpretations, computations and actions shall be conclusive and binding on all persons.

Exhibit A, §8.01. With regard to defendant's claim review procedure, the LTD Plan document further states:

> The Company shall appoint a Disability Appeals Committee (Committee) which shall consist of three or more individuals who may (but need not) be employees of the Company. The Committee shall be the named fiduciary which shall have authority to act with respect to appeals from denials of claims for benefits under the Plan. The Committee shall have full discretion to interpret the plan documents and to make factual findings. The decisions of the Committee shall be subject to judicial review only for abuse of discretion.

-8-

Exhibit A, §8.05.  The parties do not dispute that defendant, as the administrator of the LTD Plan, has the discretionary authority to determine eligibility for benefits or to construe the terms of the LTD Plan.  Accordingly, the *de novo* standard is not applicable, and the Court must apply an "arbitrary and capricious" standard to defendant's decision to deny plaintiff benefits.  *See Charter Canyon Treatment Center v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998).

Under this deferential standard of review, the "touchstone of [the Court's] inquiry is whether defendant's interpretation of its plan is reasonable." *Semtner v. Group Health Serv. of Oklahoma, Inc.*, 129 F.3d 1390, 1393 (10th Cir. 1997).  The Court may not "set aside a benefit committee's decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith." *Trujillo v. Cyprus Amax Minerals Co. Ret. Plan Comm.*, 203 F.3d 733, 736 (10th Cir. 2000).  Indeed, the plan administrators' decision "need not be the only logical one nor even the best one.  It need only be sufficiently supported by facts within their knowledge to counter a claim that it was arbitrary or capricious." *Woolsey v. Marion Labs, Inc*, 934 F.2d 1452, 1460 (10th Cir. 1991).  The Court will not substitute its judgment for that of the plan administrators unless their "actions . . . are not grounded on *any* reasonable basis.'" *Id.* (citations omitted).  The Court's role is limited to assuring that the plan administrator's "decision fall[s] somewhere on a continuum of reasonableness – even if on the low end." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (citations omitted).

"In determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision." *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992); *see also Woolsey,* 934 F.2d 1452 at 1460 ("In determining whether the decision

was supported by substantial evidence, we consider only the facts before the Administrators at the time of their decision."); *Guthrie v. Hewlett-Packard Co. Employee Benefits Org.*, 773 F. Supp. 1414, 1417 (D. Colo. 1991) ("When reviewing a denial of benefits under ERISA, the court may consider only the evidence available to the claims administrator at the time the final decision was made.") "An administrator's decision is not arbitrary or capricious for failing to take into account evidence not before it." *Sandoval*, 967 F.2d at 381. Thus, the Court's review is limited to the evidence in the administrative record herein.

.

## DISCUSSION

In order for plaintiff to have continued to receive LTD benefits after the first eighteen months of his disability, it was necessary for his disability to meet the definition of Disability set forth in the LTD Plan document. As explained above, this definition requires both that (1) plaintiff's disability be substantiated by objective medical findings and (2) plaintiff be unable to perform the work of any occupation for which he is or becomes reasonably qualified by training, education or experience. Accordingly, the issue before the Court is whether defendant acted arbitrarily and capriciously in determining that, based upon the evidence contained in the administrative record, plaintiff's disability did not meet this two-part test.

Plaintiff contends that defendant's determination was arbitrary and capricious for several reasons. First, plaintiff claims that it was unreasonable for defendant to have relied upon the independent medical evaluation of Dr. Delahoussaye, who concluded that plaintiff was capable of working full-time at a light duty status. The Court disagrees. The fact that Dr. Delahoussaye's examination lasted for approximately one-half hour is insufficient to call into questionable the

accuracy or thoroughness of his examination. Similarly, whether Dr. Delahoussaye had the correct job description when he examined plaintiff is irrelevant, as the issue herein is not whether plaintiff can return to his prior work, but rather whether he can perform the work of any occupation for which he is or becomes reasonably qualified by training, education or experience. Moreover, although Dr. Delahoussaye did not have plaintiff's December 13, 1998 MRI scan at the time of his examination, Dr. Delahoussaye specifically noted that he considered plaintiff's own report of the MRI findings and that, based upon his examination of plaintiff that day, it was his opinion that even if plaintiff did have a herniated disc, he was capable of doing light duty work on a full time basis. Indeed, Dr. Delahoussaye subsequently reviewed the December 13, 1988 MRI scan and recorded his analysis of the scan in his supplemental report, which report was part of the administrative record before the Committee.

The evidence in the administrative record regarding Dr. Delahoussaye's evaluation shows that he conducted an in-office, in-person physical examination of plaintiff, and that he reviewed medical records from various other doctors, including plaintiff's treating physician, Dr. Livingston. Given this evidence, it was not unreasonable for the Committee to rely on Dr. Delahoussaye's reports in reaching its determination. *See Kimber*, 196 F.3d at 1099.

Next, plaintiff argues that defendant failed to consider Dr. Livingston's opinion that plaintiff was permanently disabled and unable to work. The Committee notes, however, show that the Committee considered the opinions of both Dr. Livingston and Dr. McCutcheon, plaintiff's treating physicians. The Committee notes indicate that plaintiff was "not a surgical candidate" as confirmed by plaintiff's "own attending physicians." Exhibit C, p. 301A. As plaintiff acknowledges, the determination that plaintiff was not a surgical candidate is attributable

to Dr. McCutcheon. The Committee notes also state that plaintiff's "attending physicians" believe that plaintiff's asthma is well-controlled. *Id.* Further, the notes discuss plaintiff's medical records from 1985, 1996, and 1998 through 2000. Thus, it is clear that the Committee not only obtained an independent appraisal of plaintiff's claimed disability, but also reviewed evidence from plaintiff's treating physicians.

The Committee was not obligated to use any particular doctor in reaching its determination, and had full discretion to weigh the medical opinions in the administrative record. *See Wagner-Harding v. Farmland Indus. Inc. Employee Ret. Plan*, 26 Fed. Appx. 811, 2001 WL 1564041, at **5 (10th Cir. Dec. 10, 2001). Moreover, a rational plan administrator could have found the questionnaires completed by Dr. Livingston to be insufficient, as they did not contain support data for the conclusions reached, and instead were based on plaintiff's own subjective complaints of pain. *See Kimber*, 196 F.3d at 1099. Thus, the fact that the Committee may have discounted the opinions of plaintiff's treating physicians and given greater weight to the findings of the independent medical evaluation does not render defendant's denial of plaintiff's benefits arbitrary or capricious.

Plaintiff also contends that it was arbitrary and capricious for defendant to give no weight to the SSA decision to award plaintiff benefits. This argument is misguided, as SSA "proceedings are entirely different and separate from a claim under ERISA, with different parties, different evidentiary standards, and different bodies of law governing their outcomes." *Wagner-Harding*, 26 Fed. Appx. 811, 2001 WL 1564041, at **5. Accordingly, the Committee's failure to consider the SSA determination in making its own determination is irrelevant to this Court's review.

Plaintiff next argues that the Committee's decision itself reveals the unreasonableness of

the denial of plaintiff's benefits claim. First, plaintiff finds of "most importance" the fact that the Committee denied his appeal "based on no objective medical findings to support a disability within the meaning of the Plan." Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment, or, in the Alternative, Motion to Remand, p. 19. While plaintiff's medical records are indeed "rampant with objective medical findings," these medical findings do not conclusively establish that plaintiff had a disability within the meaning of the LTD Plan, and it was within the Committee's discretion to make this determination. *Id.* Although the Committee found that plaintiff's claimed disability was substantiated by objective medical findings, the Committee did not find that plaintiff's claimed disability rendered him unable to perform the work of any occupation for which he was or could become reasonably qualified by training, education or experience. Plaintiff thus failed to meet the second part of the two-part test which it was necessary for him to meet in order to be eligible for continued benefits under the LTD Plan. Based on the entirety of the evidence in the administrative record, it was not irrational for the Committee to reach this determination. *See Kimber*, 196 F.3d at 1099-1100.

Plaintiff further claims that the decision itself was arbitrary and capricious because the Committee notes indicate simply that plaintiff has degenerative disc disease instead of "degenerative disc disease at L3-4 through L4-S1." Plaintiff does not, however, explain the significance of listing the particular vertebrae affected by degenerative disc disease. Similarly, plaintiff argues that the Committee incorrectly determined that his condition did not "appreciably change" between 1998 and 2000, because in that time he had an SSA disability determination and Dr. Livingston considered him to be disabled. These events do not, however suggest a change in plaintiff's actual medical condition, but rather demonstrate opinions about plaintiff's medical

condition made during this time frame by third parties who were not operating under or interpreting the LTD Plan's guidelines. Moreover, the administrative record included Dr. Delahoussaye's opinion that there had been no change in plaintiff's condition from the date of his first MRI scan in 1998 to the date of his second MRI scan in 1999. Nor is it evident that, as plaintiff contends, the Committee disregarded other evidence, such as Dr. McCutcheon's treatment of plaintiff during this period. As discussed above, the Committee notes specifically indicate Dr. McCutcheon's assessment that plaintiff was not a surgical candidate. Similarly, despite plaintiff's claim to the contrary, the Committee's note that surgery was unnecessary is supported by a radiology consultation report dated December 1998, which report was part of the administrative record.

Finally, plaintiff argues that it was arbitrary and capricious for defendant to rely on Ms. Rose's report. The administrative record shows that Ms. Rose reviewed the records of Dr. Delahoussaye, Dr. Livingston and Dr. McCutcheon regarding plaintiff's back condition, in addition to plaintiff's December 1998 and October 1999 MRI scans. The Employability Assessment further shows that Ms. Rose's analysis considered plaintiff's other conditions, including asthma and hearing loss, and that Ms. Rose found twelve jobs for which plaintiff had directly transferrable skills and which were classified as light duty within Dr. Delahoussaye's restrictions. Despite the fact that he was represented by counsel throughout the appeal process, plaintiff did not supplement the administrative record with expert reports or other documentation to challenge the conclusions set forth in Ms. Rose's Employability Assessment.

Now, for the first time, plaintiff challenges the Employability Assessment, based solely on Ms. Rose's deposition testimony, which was taken after the administrative record was closed. As

this testimony was not before the Committee when it made its decision, the Court is not permitted to consider such testimony in reviewing the Committee's determination. *See Sandoval*, 967 F.2d at 380.

Even if this testimony were taken into consideration, however, the Court would not agree that Ms. Rose's failure to consider plaintiff's hearing loss is significant. Plaintiff's hearing loss occurred in 1983. Plaintiff does not allege that his hearing loss affected his ability to perform in a variety of positions since 1983, including his most recent job at Intel. Nor does plaintiff allege that he required any accommodations after 1983 as a result of his hearing loss. Indeed, plaintiff did not apply for benefits based on his hearing loss, but applied for such benefits based only on his back condition. Nor is it significant that Ms. Rose erroneously may have found plaintiff's highest specific vocational performance to be a seven rather than a three, because Ms. Rose identified six alternate positions for which plaintiff would have been qualified or reasonably could have become qualified with a specific vocational performance of three or less.

Plaintiff has failed to refute that the administrative record contains the following evidence: (1) plaintiff's claimed disability was a back condition; (2) Dr. Delahoussaye's reports established that plaintiff had a back condition, but that he could return to work full-time with certain job modifications; (3) Dr. McCutcheon, plaintiff's treating orthopedic surgeon, opined that plaintiff's prognosis for continued spontaneous recovery remains good; and (4) Ms. Rose's analysis of plaintiff found at least six jobs that plaintiff would be able to do within Dr. Delahoussaye's restrictions. The record thus supports the Committee's determination that plaintiff was not disabled from performing any occupation. Moreover, plaintiff has failed to present any evidence to suggest that the Committee did not make a full and fair review of the administrative record.

Rather, the Committee properly considered all of the documentation before it – including submissions by plaintiff's treating physicians and attorney. Finally, plaintiff was represented by counsel throughout the appeals process. His counsel not only was given the opportunity to supplement the record but also affirmatively notified defendant that plaintiff's appeal was complete.

## CONCLUSION

In light of the foregoing, defendant had a reasonable basis for denying plaintiff's claim for disability benefits. Accordingly, the Court finds that there is no material fact in dispute as to whether the defendant acted arbitrarily and capriciously, and that, as a matter of law, defendant should prevail.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment **[Doc. No. 46]** is **GRANTED**, and Plaintiff's Motion for Summary Judgment, or, in the Alternative, Motion to Remand **[Doc. No. 48]** is **DENIED**.

**DATED** this 26th day of July, 2002.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:

Nancy C. Wagner, Esq.
Duhigg, Cronin, Spring, Berlin & Bencoe, P.A.
P.O. Box 527
Albuquerque, New Mexico 87103
(505) 243-3751

<u>Attorneys for Defendant</u>:
Duane C. Gilkey, Esq.
Carol L. Dominguez, Esq.
Gilkey & Stephenson, P.A.
P.O. Drawer 25566
Albuquerque, NM 87125
(505) 242-4466